**UNITED STATES, Appellee,**

v.

**Specialist Rex A. WOLFE, 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, United States Army, Appellant.**

**ACMR 8901700.**

U.S. Army Court of Military Review.

26 Jan. 1990.

For appellant: Captain Thomas A. Sieg, JAGC, Captain Deborah C. Olgin, JAGC (on brief).

For appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

The appellant, pursuant to his pleas, was convicted by a military judge sitting as a general court-martial of assault with a means and force likely to produce grievous bodily harm and of being drunk and disorderly in violation of Articles 128 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1982) [hereinafter UCMJ]. He received an approved sentence that included a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of Private El.[1] On appeal, appellant alleges that the military judge erred in considering testimony given by appellant's platoon sergeant regarding appellant's lack of potential for continued service in the United States Army and that the approved sentence is inappropriate for the offense committed. We find the appellant waived the error regarding his potential for further service by failing to object to the receipt of that testimony at the time of trial. We further find merit in appellant's claim with regard to the appropriateness of his approved sentence for the reasons set forth below.

I

The appellant with other members of his unit, to include the unit officers, attended a unit "Dining In" in the company mess hall. During a portion of the evening, the appellant acted as a bar attendant and became inebriated. The appellant then became loud and rowdy. A Sergeant (SGT) Duncan, on his own initiative, assisted the appellant in leaving the party and going to his room. However, he returned to the party and SGT Duncan subsequently was directed by both the unit First Sergeant as well as the appellant's platoon commander to take him to his room and leave him there. SGT Duncan did not fully comply with the instructions of his superiors and later that evening, a noncommissioned officer (NCO) observed the appellant stumbling towards the front gate of the Kaserne carrying two bottles of wine. The NCO, who was in uniform, identified himself by name and unit to the appellant and told him that he should turn around and go back to the barracks and go to sleep. He cautioned that should the appellant go out the gate in his current condition, he would either be picked up, get in a fight, or start trouble. The NCO then asked the appellant if he understood and he received an affirmative response. The NCO then turned away and the appellant then struck him behind the right ear with a full bottle of wine. The NCO received a severe laceration of the head which required more than fifteen stitches to close. At the time of trial, he still suffered severe headaches with a medical prognosis that the headaches would continue for some time.

During the sentencing portion of the trial, the trial counsel called the appellant's platoon sergeant who had formerly been the appellant's squad leader. He testified that he had observed the appellant's performance of duty for some months and stated that the appellant required close supervision in order to insure that his work was performed, much less performed properly. He did not perceive the appellant as a motivated soldier and rated his duty per-

---

1. We note that the authority line in the promulgating order erroneously reflects action by Major General Krawciw rather than Major General Schoffner. The court will require a corrected order.

formance as 0 on a scale of 1 to 10. He further testified that he and the appellant had a chance meeting with the victim in the barracks at which time the victim showed the appellant the wound he had received. The appellant did not apologize for his actions, but stated with what was described as a smirk on his face, "Yeah, it really is a good cut, ain't it."

The trial counsel asked the question, "Sergeant Wasson, given the accused's duty performance, his conviction today for aggravated assault and drunk and disorderly conduct, his attitude toward his crimes, should the accused be returned to your unit?" The witness responded, "No sir." The trial counsel then asked, "Would you like to see the accused retained in the United States Army?" and the witness again responded, "No sir." No objection to these questions and answers was lodged by the appellant or his counsel.

As we have noted, the appellant alleges that the military judge committed prejudicial error in considering testimony given by appellant's platoon sergeant in response to an improper question by the prosecutor whether he believed the appellant should be retained in the unit as well as the United States Army. *See United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A.1989).

■ The Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(b)(5) [hereinafter R.C.M.], authorizes the trial counsel to present evidence by testimony or oral deposition in the form of opinions concerning an accused's previous performance as a soldier and potential for rehabilitation. Under this rule, "rehabilitative potential" has been interpreted to mean the action or process of restoring an individual to a useful or constructive place in society through some form of vocational, correctional, therapeutic retraining, or other reconstructive measures. Thus, rehabilitation can denote both a return to a particular status and a return to society generally. *United States v. Horner*, 22 M.J. 294, 296 (C.M.A.1986). That Court further stated it was inappropriate to receive opinion testimony with regard to rehabilitative potential when such testimony is based not on the witnesses' insight into the personal circumstances of the accused, his character and potential, but is based solely upon the severity of the offenses committed and the witnesses' view as to whether the court should adjudge a discharge or lengthy confinement. *Id.*

Subsequently, in *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989), the Court further clarified what foundation must be laid before a witness may express an opinion and what is the permissible scope of such opinion. In regard to these questions, the Court, in substance, stated that an appropriate witness is one who can be helpful to the trier of fact in making the determination of fact in issue, thus the witness' testimony must be relevant under Mil.R.Evid. 701. To show that relevance, a foundation must be laid which demonstrates that the witness possesses sufficient information and knowledge with regard to the accused's character, his performance of duty as a soldier, his moral fiber, and his determination to be rehabilitated which would afford a rational basis to form an opinion which will be of some value to the finder of fact. The Court further noted that witnesses will not be allowed to express an opinion as to whether an accused should be punitively discharged as such statements infringe on the court-martial's responsibility to determine an appropriate sentence. Consequently, the use of euphemisms such as "no potential for continued service" or statements that a particular accused "should be separated" are the equivalent of expressing the view that the accused should receive a punitive discharge and are prohibited. *Id.* at 305.

This court recently considered a case involving the foregoing rules concerning rehabilitative potential. There it was stated:

As we understand *Horner* and *Ohrt*, a witness may weigh the nature, circumstances, and impact of the accused's offenses, together with his knowledge of the accused's character and duty performance, when deciding the question of rehabilitative potential. Having weighed these matters, a witness' opinion, whether favorable or unfavorable, is generally

admissible. This must be distinguished from the situation where a witness views the offenses as so serious that he is unable or unwilling to go beyond them, that is, to weigh them against such relevant factors as his knowledge of duty performance, in determining rehabilitative potential. In this latter case, the opinion should not be allowed since it is simply an opinion as to the severity of the offenses. It is for the military judge to determine whether a witness is properly factoring the severity of the offenses into the rehabilitative potential equation, or whether he is attempting, impermissibly, to testify that the accused deserves a harsh punishment because the offenses are so serious.

*United States v. Stimpson*, 29 M.J. 768, 769 (A.C.M.R.1989).

Turning to the facts in this case, the record establishes that SGT Wasson, the prosecution's witness concerning the appellant's rehabilitative potential, possessed and established on the record sufficient relevant information and knowledge concerning the appellant's character, prior performance of duty as a soldier, and some information concerning his moral fiber. He was able to express a knowledgeable and rationally based opinion which was of some value to the trier of fact. Nevertheless, the prosecutor asked an improper question and received a prohibited answer, to wit: "Would you like to see the accused retained in the United States Army?" and the response: "No sir." As this answer in response to the posed question was no more than an "euphemism" to the effect that the witness was of the opinion the accused should be punitively discharged from the Army, it violated the rule in *Ohrt*, and was error. *See United States v. Ohrt*, 28 M.J. at 305.

██ Heretofore, this court has held that failure by the trial defense counsel to raise an objection under *United States v. Horner, supra,* to a proffered prosecution testimony concerning an accused's potential for rehabilitative potential which was based only upon the severity of the offense resulted in waiver of the issue on appeal.

*See United States v. Haynes*, 29 M.J. 610, 611 (A.C.M.R.1989); *United States v. Smith*, 23 M.J. 714, 716 (A.C.M.R.1986).

Furthermore, our sister court has applied the same rule recently to errors which violated the requirements set forth in *United States v. Ohrt, supra. See United States v. Freeman*, 29 M.J. 865 (A.F.C.M.R.1989).

A court-martial sentencing proceeding is an evidentiary hearing. As such, it is subject to the requirements of the Military Rules of Evidence (Mil.R.Evid.). Mil.R. Evid. 103(a) provides in part that "error may not be predicated upon a ruling which admits or excludes evidence unless the ruling prejudices a substantial right of a party, and ... in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context." The drafter's analysis of the Military Rules of Evidence pertaining to the foregoing rule indicates that it was intended to be strictly construed in accordance with essentially prior military practice and that of other courts in the federal system. The thrust of the rule appears to be directed at the trial court. Compliance with the rule insures that trial judges are able to make knowledgeable and informed rulings and that the public expense of appellate ordered evidentiary fact finding, rehearings, and new trials is kept to an absolute minimum, an obviously salutory effect.

Accordingly, as the foregoing error does not have constitutional impact nor does it involve the doctrine of plain error, *see United States v. Fisher*, 21 M.J. 327 (C.M. A.1986), the failure of the trial defense counsel to lodge an objection to the improper testimony waived consideration of the error on appeal.

II

Appellant further alleges that the approved sentence is inappropriate for the offense committed. Considering all the relevant aggravating and mitigating circumstances, we find some sentence relief is appropriate with regard to the length of

confinement. *See* Article 66, UCMJ, 10 U.S.C. § 866.

Accordingly, the findings of guilty are affirmed. After considering the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

Judge KANE and Judge WERNER concur.