UNITED STATES, Appellee,

v.

Private El Rodney L. THOMAS,
590–12–0492, United States
Army, Appellant.

ACMR 8903645.

U.S. Army Court of Military Review.

18 Sept. 1990.

For Appellant: Major Michael J. Kelleher, JAGC, Captain Andrew G. Oosterbaan, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Gary A. Khalil, JAGC (on brief).

Before FOREMAN, HAESSIG and HAGEN, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, in accordance with his pleas, of possession and use of marihuana, possession and use of cocaine, assault consummated by a battery, and drunk driving, in violation of the Uniform Code of Military Justice Articles 112a, 128 and 111, 10 U.S.C. §§ 912a, 928 and 911 (1982 & Supp. V 1987) [hereinafter UCMJ]. The approved sentence provides for a bad-conduct discharge, confinement for nine months, and forfeiture of all pay and allowances.

The appellant contends that the military judge erred by considering testimony of the appellant's chain of command regarding his lack of rehabilitative potential. Additionally, this court specified the issue whether the appellant's plea of guilty to drunk driving was provident.

During the military judge's inquiry into the appellant's plea of guilty to drunk driving the appellant stated that he was detained by the military police for making an incomplete stop at a stop sign. The military police smelled alcohol on the appellant's breath, and asked him to perform a variety of sobriety tests. The appellant passed all tests except the "finger-nose touch." The appellant told the military judge that he correctly performed the "finger-nose touch" but then moved his finger from the end of his nose, leading the military policeman to conclude that he had failed the test. The appellant was given two breathalyzer tests which reflected blood alcohol levels of .07% and .06%.

The appellant told the military judge that he had consumed only one can of beer prior to driving. When the military judge asked the appellant whether he believed that he had complete control of the vehicle, the appellant responded, "[Y]es, I did, Your Honor." The military judge asked the appellant whether the one beer affected his ability to drive in any way, and the appellant stated that it did not.

Concerned about the apparent inconsistencies between the appellant's responses

and the plea of guilty, the military judge recessed the court to allow the appellant and his counsel to consult further. The military judge reconvened the court and continued the plea inquiry. The military judge took judicial notice of Army Regulation 190–5, Motor Vehicle Traffic Supervision, para. 4–11 (8 July 1988), and explained to the appellant that the regulation establishes a presumption of impairment if there is a blood-alcohol level of .05% or more. The military judge explained that a drunk driver commonly believes that he is not impaired, but "we have to go by what the observers felt." He asked the appellant:

> And, so then, if you look at that specification, even though you feel that, perhaps, you were not necessarily drunk, are you satisfied, then, that based upon all of the evidence—that is, the Military Police report, the fact that you came up .07 and .06—that it would be a reasonable conclusion, from the Military Policeman, that you were, in fact, impaired?

The appellant responded, "Yes, Your Honor." The military judge continued his probe:

> Very well, then. Private Thomas, considering that the regulation indicates that there is a presumption of impairment, if the blood-alcohol concentration is in excess of .05; and, your test ... indicated .06 and .07. This, coupled with the fact that there was a traffic violation—and, also, coupled with the report of the Military Policemen, that, in their opinion, you did not adequately pass all of their test, then, you can see, then, how they could conclude that you were, in fact, impaired.

The appellant again responded, "Yes, Your Honor." The military judge accepted the plea of guilty and convicted the appellant of drunk driving.

During the sentencing hearing, the prosecution called three witnesses, Captain (CPT) L, the appellant's company commander, First Lieutenant (1LT) R, his platoon leader, and Sergeant (SGT) L, his squad leader. CPT L testified that: "[I]t would not be in the Army's greatest ability to be able to rehabilitative [sic] him, with any kind of effort—it would just be too great of an effort, and just not worth the Army's time, to be able to try and do that." Asked whether, given a choice, he would want the appellant back in his unit, CPT L testified that he would not.

1LT R testified that the appellant has no rehabilitative potential. Asked to explain his evaluation, 1LT R stated, "Uh—he's already been rehabilitatively transferred—he's been transferred, once, and it didn't work—I wouldn't want him in my unit, again."

SGT L testified that he had observed the appellant for four or five hours a day for eight months. SGT L characterized the appellant's duty performance as poor. He testified that the appellant was difficult to find during the duty day. He described the appellant as a "loner" who had little interaction with members of the unit. SGT L found the appellant to be aggressive and confrontational with other soldiers. The appellant would show respect "to your face" but would not respond to counseling or leadership. Finally, SGT L testified that he did not believe that the appellant could be rehabilitated "to be in the Army," that he did not think the appellant could be a productive soldier, and that he did not want the appellant back in his unit.

In his sentencing argument the trial counsel argued that too much time had been spent counseling the appellant, who "clearly, has no rehabilitative potential—you've heard testimony to that effect." The trial counsel concluded by arguing: "His record, Your Honor, clearly warrants a punitive discharge. We can't have a soldier like this in the military. And you've heard testimony that none of the individuals that were his supervisors want him back."

## I. GUILTY PLEA TO DRUNK DRIVING

■ A military judge may not accept a plea of guilty unless the accused admits every element of the offense to which he pleads guilty. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(b) discussion [hereinafter R.C.M.].

Unlike his civilian counterparts, a military accused may not plead guilty but maintain his innocence, even if he intelligently decides that a guilty plea is in his interest and the record strongly evidences guilt. UCMJ art. 45(a), 10 U.S.C. § 845(a) (1982); *United States v. Epps*, 25 M.J. 319, 321 (C.M.A. 1987); citing *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In the case before us appellant asserted that he had consumed only one beer, denied that he was "drunk," denied that his ability to drive an automobile was impaired, and maintained that he passed the sobriety test. Even after lengthy consultation with counsel and inquiry by the military judge, the appellant never admitted that he was impaired; he would only admit that the military police thought he was impaired. In short, he was unwilling to admit an essential element of the offense. *See* Manual for Courts–Martial, United States, 1984, Part IV, para. 35b. We hold that the military judge erred by accepting the plea of guilty to drunk driving without resolving the inconsistency between the appellant's answers and his plea of guilty.

## II. EVIDENCE OF LACK OF REHABILITATIVE POTENTIAL

■ During the sentencing hearing, the prosecution is permitted to present evidence, in the form of opinion testimony, regarding an accused's "previous performance as a servicemember and potential for rehabilitation." R.C.M. 1001(b)(5). The term "rehabilitation" encompasses more than a return to military duty; it includes restoration to society generally. *United States v. Horner*, 22 M.J. 294, 296 (C.M.A. 1986). The Court of Military Appeals has held that members of the military chain of command are competent to render opinions regarding potential for rehabilitation in the broader sense of restoration to society, remarking that, "[I]t seems likely that accurate and useful judgments of servicemembers' rehabilitative potential can frequently be formed." *Id.* However, a commander may not opine that an accused should receive a punitive discharge, nor may he express euphemisms for imposing a punitive discharge, such as, "no potential for continued service." Such opinions, whether expressed directly or euphemistically, usurp the sentencing authority of the court-martial. *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989).

■ Within the limitations imposed by *Horner* and *Ohrt*, there are few military superiors who are qualified to express an admissible opinion regarding an accused's lack of rehabilitative potential, notwithstanding the apparent permissibility of doing so in Rule for Courts–Martial 1001(b)(5). While they often are well qualified to express opinions regarding "previous performance as a servicemember," their observations of an accused, as well as their training, education and experience, usually qualify them only to express an opinion regarding rehabilitation as a servicemember. Unless they have special training or experience as a penologist, psychiatrist, counselor, or behavioral scientist, or have had an opportunity through frequent contact to gain "special insight" into an appellant's personal attributes, they rarely will be qualified to express opinions regarding an accused's potential for return to society. *See United States v. Horner*, 22 M.J. at 296.

■ The Coast Guard Court of Military Review has understandably concluded that a trial counsel may not offer chain of command opinions regarding lack of rehabilitative potential except in rebuttal. *United States v. Claxton*, 29 M.J. 667 (C.G.C.M.R. 1989), *aff'd on reconsideration*, 29 M.J. 1032 (C.G.C.M.R.1990). The Air Force Court of Military Review has declined to offer "bright-line" guidance, preferring to evaluate each case to determine "whether the opinion testimony, taken as a whole in the context of the language used, represents a genuine insight into the character and potential of the accused to be rehabilitated or, instead, simply constitutes an attempt by the witness to influence the court to return a sentence that includes a punitive discharge." *United States v. Freeman*, 29 M.J. 865, 867 (A.F.C.M.R.1989).

In our view, the Air Force approach is consistent with the intent of the drafters of Rule for Courts–Martial 1001(b)(5) and the Court of Military Appeals decisions, and we will use it to resolve the issue in the case before us.

We hold that the testimony of the three witnesses that they did not want the appellant back in their units was permissible. Such opinions fall short of impermissible recommendations that the appellant not be returned to duty anywhere in the Army. *United States v. Murphy,* 29 M.J. 573, 576 (A.F.C.M.R.1989). We hold that the testimony that the appellant could not be rehabilitated in the Army was impermissible. We note that the trial counsel's extensive examination of SGT L concerning his efforts to counsel the appellant and his observations of the appellant's aggressive and anti-social behavior during an eight-month period is the type of foundational evidence required to qualify a witness "to impart his/her special insight into the *accused's* personal circumstances." *United States v. Horner,* 22 M.J. at 296; *United States v. Beno,* 24 M.J. 771, 772 (A.F.C.M.R.1987), *pet. denied,* 26 M.J. 57 (C.M.A.1988). Unfortunately, the trial counsel limited SGT L's opinion testimony to the prohibited euphemism that the appellant could not be rehabilitated "in the Army." *United States v. Freeman,* 29 M.J. at 867, citing *United States v. Ohrt,* 28 M.J. at 305.

If there was any doubt whether the purpose of the testimony in this case was intended to influence the court to impose a punitive discharge, it was removed by the trial counsel's sentencing argument. The argument directly ties the testimony of the three witnesses to a request for a punitive discharge.

We hold, however, that the error was waived by the trial defense counsel's failure to make a timely objection to the impermissible testimony. Mil.R.Evid. 103(a); *United States v. Wolfe,* 29 M.J. 1018 (A.C.M.R.1990). Further, we are satisfied that the error did not rise to the level of "plain error." The case was tried by an experienced military judge, who is presumed to know and apply the law. *United States v. Montgomery,* 42 C.M.R. 227 (C.M.A.1970). We are satisfied that he did not allow two junior officers and a sergeant to usurp his sentencing authority. As in the *Horner* case, we are confident that "the judge placed the testimony in the proper perspective." *United States v. Horner,* 22 M.J. at 296.

While we could authorize a rehearing to remedy the improvident plea of guilty to drunk driving, we believe that the interests of justice and judicial economy will be best served by dismissing the drunk driving charge and specification and reassessing the sentence. Accordingly, the findings of guilty of Additional Charge II and its Specification are set aside. Additional Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the entire record and the error noted, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for eight months, and forfeiture of all pay and allowances.

Judge HAESSIG and Judge HAGAN *, concur.

---

* Judge William R. Hagan took final action in this case prior to his reassignment.