**UNITED STATES**

v.

**Senior Airman David A. POMPEY, FR 244–33–3272, United States Air Force.**

**ACM 28219.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 Sept. 1989.

Decided 21 Dec. 1990.

---

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Captain Leonard R. Rippey.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

O'BRIEN, Chief Judge:

This is another sad case of an outstanding performer, caught in a unit "sweep" urinalysis. He pleaded guilty to a one-time use of cocaine, was convicted, and was sentenced to a bad conduct discharge, total forfeitures, and confinement for one month.

Two issues concern us today. First, piercing through the confusion in the proper application of various labels of "command directed" and "inspection," we find the process through which appellant's sample was collected to have been a lawful inspection. Second, we hold that the commander was not relieved of the requirements of *United States v. Horner*, 22 M.J. 294 (C.M.A.1986); and *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989), merely because he testified as a rebuttal witness. We set aside the sentence.

### I

Appellant's plea was conditional, preserving his challenge to the military judge's finding that the collection of his urine was a valid inspection under Mil.R. Evid. 313(b). Appellant contends that it was a "command directed" urinalysis contemplated by Air Force Regulation (A.F.R.) 30–2, Social Actions Program, para. 5–8.[1]

When a member of appellant's squadron twice tested positive for cocaine in urinalysis tests, the commander acceded to the first sergeant's suggestion that they conduct a unit "sweep." Every member of the unit was to be tested, but no individual was suspected, least of all the appellant, an administrative specialist, who had an excellent reputation in the squadron. Although the commander did not believe he had a drug problem in the unit, he believed that the positive urinalysis result of the one airman had created a cloud over his squad-

---

1. Paragraph 5–8 of AFR 30–2, empowers a commander to refer a military member for a "command directed" examination, to determine, among other things, "a member's competency for duty and the need for counselling, rehabili- tation, or other medical treatment." Because this referral is based upon "reasonable suspicion" and not probable cause, "Results may *not* be used against the member in any disciplinary action under the UCMJ...."

ron. To quote the military judge's essential findings, the sweep was ordered: "to clear the air and ensure not only military fitness in the Civil Engineering Squadron, but also a drug-free atmosphere in the squadron." Much to the surprise of all, appellant's sample tested positive for cocaine.

This assertion of error was begotten out of the confusion shared by the commander, the first sergeant, and other staff agencies as to what label to attach to this "sweep." Although the commander thought the proper label was "commander directed" and that it could not be used in a court-martial, the evidence is "clear and convincing"[2] that what he did was to order an inspection, and the detailed findings by the military judge support this conclusion. *United States v. Parker*, 27 M.J. 522 (A.F.C.M.R. 1988). The results of this inspection are clearly admissible. *United States v. Daskam*, 31 M.J. 77 (C.M.A.1990); *United States v. Bickel*, 30 M.J. 277 (C.M.A.1990).

## II

During the pre-sentencing case, the prosecution called appellant's commander, a Major Rhye, to testify not only as to appellant's lack of rehabilitation potential, but also that it would not be his desire "to have Senior Airman Pompey return to the unit and work for [Major Rhye] in the future."[3] Appellate defense counsel complain that this testimony is prejudicial because it is based solely upon the gravity of appellant's offense. *United States v. Horner, United States v. Ohrt*, both *supra.*

It could not be more clear that Major Rhye's opinion was based solely on the nature of the offense. In his letter transmitting the court-martial charges, Major Rhye wrote: "Since his arrival at Maxwell Air Force Base, Senior Airman Pompey's performance and military bearing have been satisfactory. Although no derogatory data can be found at this time, *drug use is not compatible with military service and rehabilitation is not recommended.*" (emphasis added). In his testimony, Major Rhye admitted that appellant was "a top five percent airman, ... a super star, super troop," and that he really had nothing negative to say about appellant aside from this urinalysis.

Because Debra Banker, appellant's immediate supervisor, had stated, "I would not hesitate to have David [appellant] work for me again and feel that he is certainly capable of rehabilitation," the prosecution argued that they should be able to use Major Rhye's testimony in rebuttal. The military judge permitted the testimony believing that since it was direct rebuttal, it was outside the rules laid down by R.C.M. 1001(b)(5)[4] and the strictures of both *Horner* and *Ohrt.*

Clearly to rebut Ms Banker's statement, Major Rhye had the right to testify, as he did, that he did not desire to have appellant return to his unit and work for him in the future. When the door is thus opened by the defense "by bringing witnesses before the court who testify that they want him or her back in the unit, the government is permitted to prove that that is not a consensus view of the command." *United States v. Aurich*, 31 M.J. 95, 97 (C.M.A. 1990). The stickier wicket is whether or not Major Rhye's testimony that appellant had no rehabilitation potential within the

---

2. In determining that this was an inspection and not a command directed urinalysis, the military judge correctly employed the "clear and convincing" standard of proof since the inspection had not been previously scheduled, and it was employed immediately after another member of the unit had a positive urinalysis. Mil.R.Evid. 313(b).

3. Appellant's commander was asked:
   Q. Major Rhye, considering everything that you know about Senior Airman David Pompey, do you feel that he has rehabilitation potential within the Civil Engineering Squadron?
   A. I do not.
   Q. Would it be your desire to have Senior Airman Pompey return to the unit and work for you in the future?
   A. No; I would not.

4. R.C.M. 1001(b)(5) provides: "The trial counsel may present ... evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation...."

civil engineering squadron is error, because it clearly relied solely on this one offense.

We find that the military judge erred when he ruled that *Horner* and *Ohrt* did not apply to rebuttal evidence. One of the evils that these cases and their progeny seek to avoid is the communication of a policy statement to the sentencing authority that the offense of which the accused has just been convicted, in and of itself, destroys any potential the accused might have for rehabilitation or further service. The Court of Military Appeals has made it clear:

> that "rehabilitative potential" refers to the accused. It is based upon an "assessment of ... [the accused's] character and potential." *Horner* 22 M.J. at 296. Thus, a witness whose opinion is based upon factors other than an assessment of the accused's service performance, character, and potential does not possess a rational basis for expressing an opinion."

*Ohrt*, 28 M.J. at 304; *United States v. Horner, supra; United States v. Cherry,* 31 M.J. 1 (C.M.A.1990). Whether the commander is testifying pursuant to R.C.M. 1001(b)(5), or in direct rebuttal, when he addresses potential for rehabilitation, he is talking about the accused and not the offense, and his opinion must therefore be based upon something in addition to the seriousness of the offense that has occasioned the court-martial.

Ms. Banker testified that appellant had rehabilitation potential and that she would welcome him back into the unit. She based this opinion upon her observations of his duty performance, his eagerness, conscientiousness and work with the honor guard. The commander was certainly entitled to state for the record that Ms. Banker's desire to have appellant back in the unit "was not the consensus view of the command." However, when he ventured into the area of potential for rehabilitation, the rules of rebuttal did not relieve him from the requirement to have a logical predicate for his conclusion, other than solely the gravity of the offense. *United States v. Kirk,* 31 M.J. 84 (C.M.A.1990).

Judge James is concerned that we are extending *Horner* and *Ohrt* past their present bounds. To the extent that we are applying these principles for the first time to rebuttal evidence, he is correct. Whether or not we are engaged in an "extension" of *Horner, Ohrt, Aurich, Kirk,* and all the rest, is immaterial. The law requires that rehabilitation potential testimony focus on the individual, and not solely the offense that occasioned his court-martial. The prosecution's failure to follow that principle in this case was error. We concur with Judge James' recommendation in Part III of his separate opinion, that the time has come to reassess the wisdom of R.C.M. 1001(b)(5). The present rule has created a litigation load which may well outweigh its usefulness.

The approved findings of guilty are affirmed. The sentence is set aside and the record is returned to The Judge Advocate General. A rehearing on sentence may be ordered. If a rehearing on sentence is not ordered, a sentence of no punishment is hereby affirmed.

Senior Judge PRATT concurs.

Senior Judge O'HAIR did not participate.

JAMES, Judge, concurring in part and dissenting in part:

I would affirm both the findings and the sentence.

### I. The Inspection

I agree with the Chief Judge on his disposition of the nomenclature controversy about the urinalysis: The result depends on which label we give to the urinalysis, not on the labels used mistakenly by the various laymen who executed it. I look to their acts and to their intent and then categorize the urinalysis as an inspection of the unit under Mil.R.Evid. 313.

### II. Rehabilitation Potential & Rebuttal

I also agree with the Chief Judge's reasoning on Major Rhye's testimony that "I would not" [desire to have Airman Pompey return to the unit and work for him again]. *United States v. Aurich,* 31 M.J. 95, 96–97 (C.M.A.1990). However, I disagree with

the Chief Judge when he reaches what is, indeed, the "stickier wicket": Major Rhye's testimony that "I do not" [feel that Airman Pompey has rehabilitation potential *within his unit* ].

The drafters of R.C.M. 1001 sought to incorporate what they could from the Federal Rules of Criminal Procedure (which rely on judicially supervised sentencing reports) into a fair and economical sentencing procedure. *See* MCM, App. 21, R.C.M. 1004(c) (1984). *See also, United States v. Charley*, 28 M.J. 903, 907–8 (A.C.M.R. 1989). R.C.M. 1001(b)(5), "Evidence of rehabilitation potential," was one of the newest of those features. Were it to function correctly, it would help serve the objective that sentencing be focused on the attributes of the offender as well as on the crime, a principle well established in military law. *See generally, United States v. Mack*, 9 M.J. 300, 316–19 (C.M.A.1980). Too many aggressive trial counsel, however, introduced as "rehabilitation" evidence the testimony of commanders that, in shorthand, "We should throw the bum out." The Court of Military Appeals heard in such testimony the specter of command influence saying through euphemisms what well established rules would otherwise prevent. It renewed its attention to those rules and applied them to limit testimony under R.C.M. 1001(b)(5), too. *United States v. Horner*, 22 M.J. 294, 296 (C.M.A. 1986); *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A.1989). Of course, trial counsel continued unwisely to press the limits, and that has required the Court of Military Appeals to address the problem in ever more explicit terms, recently reaching the point at which it is explored in four decisions published back-to-back, *United States v. Kirk*, 31 M.J. 84 (C.M.A.1990); *United States v. Wilson*, 31 M.J. 91 (C.M.A.1990); *United States v. Aurich*, 31 M.J. 95 (C.M.A.1990); *and United States v. Corraine*, 31 M.J. 102 (C.M.A.1990). But always the problem has appeared as an issue under R.C.M. 1001(b)(5), ". . . rehabilitation potential."

In this case, say the majority, the problem appears in a new guise, but it is the same problem, and therefore the majority extends the law limiting R.C.M. 1001(b)(5) to apply to R.C.M. 1001(d), "Rebuttal . . .," saying that the objective is the same. Once the *Horner–Ohrt* rules are thus extended, the majority holds that Major Rhye considered *only* the crime, not information about the accused, and therefore lacked a reasoned basis for his opinion, testimony without relevance according to the helpful analysis in *Aurich*. The majority has no authority which requires its extension of *Horner–Ohrt* to rebuttal, and I disagree with it. If *Horner–Ohrt* is to be thus extended, I also disagree with the majority's characterization of Major Rhye's opinion.

The Court of Military Appeals anticipated in *Aurich* the specific testimony on which we agree and the generic problem that divides us. Rebuttal is one of the places at which it can be relevant to hear a commander say, "I don't want him back," if, as here, a prior defense witness has said otherwise, 31 M.J. at 96–97 and note at 96–97; *see also United States v. Wilson*, 31 M.J. 91, 94 (C.M.A.1990) ("preemptive use"); *United States v. Thomas*, 31 M.J. 669, 672 (A.C.M.R.1990) ("except in rebuttal"). In my view, the rebuttal exception in *Aurich* also governs the testimony that divides us, and it is my authority for the proposition that *Horner–Ohrt* should not be extended to rebuttal.

The principle underlying the *Aurich* rebuttal exception deserves some short exploration. Under R.C.M. 1001, the scope of sentencing evidence is, with some exceptions, governed by the accused. Ignoring rehabilitation testimony for a moment, the prosecution is limited to introduction of the few facts stated on the charge sheet, R.C.M. 1001(b)(1); some information from personnel records, R.C.M. 1001(b)(2); prior convictions (if there are any), R.C.M. 1001(b)(3); and aggravation, R.C.M. 1001(b)(4), which is often already covered by the evidence on the merits. The limitation that rehabilitation potential be discussed only in opinion, R.C.M. 1001(b)(5), helps maintain that constriction. Thus, in the typical case at least, there is little to be heard from the prosecution except in rebut-

tal, and if the accused offered nothing, or was careful, *see, e.g., United States v. Partyka,* 30 M.J. 242 (C.M.A.1990), the prosecution would remain almost speechless throughout sentencing. The great importance of *Horner–Ohrt* (ignoring the specter of command influence) was to maintain that imbalance. The imagination of counsel being what it is, *Horner–Ohrt* now seems to have been inevitable. Its value abates when, as here, the trial counsel *refrains* from using as "rehabilitation potential" the testimony that he knows he has. Instead, when the testimony is held back, the imbalance remains as designed, and the testimony gains relevance only when the converse proposition is urged by the defense during its sentencing case. It then becomes rebuttal because the accused provoked it, thereby surrendering his control of the scope of the evidence.[1]

In my view, that is as true of the divisive testimony here as it is of the testimony on which we agree. When the defense introduced the Banker letter, the defense wisely prevented cross-examination of Mrs. Banker on the wisdom of her conclusion that "he is certainly capable of rehabilitation," and it prevented questions to her about whether that rehabilitation should or could occur in Airman Pompey's prior duty setting, as her letter might imply.[2] While this is not a *Partyka* situation, it still invites the observation of my Brother Kastl in such a case: "... the prosecution need not suffer an accused who seeks to gull the trier of fact with misinformation, either directly or by implication." *United States v. Privette,* 31 M.J. 791 (A.F.C.M.R.1990) (collecting cases). Major Rhye's testimony that "I do not" [feel that Airman Pompey has rehabilitation potential *within his unit*] became relevant as directly contradicting the state-

ment in the Banker letter, "I would not hesitate to have David *work for me again and feel he is certainly capable of rehabilitation."* Major Rhye's statement is also relevant as controverting Mrs. Banker's implication that Airman Pompey could be rehabilitated while working for her in his unit.

Assuming that the *Horner–Ohrt* rule should be thus extended, I still disagree with the Chief Judge on the "based solely" aspect of that rule. Note that Major Rhye showed familiarity with Airman Pompey's prior performance, which was distinctively superior. Thus, his testimony is distinguishable from that in cases like *United States v. Kirk.* My brothers discount Major Rhye's opinion because his conclusion seems to them to contrast with his observations, but the opinion is nonetheless his and based on good observation of Airman Pompey's performance and his own balance of factors. That gives the testimony some relevance that was missing in *Aurich,* and any relevance makes it eligible for admissibility. Exploration of its value and persuasiveness to assess its weight depended on cross-examination. The defense did examine Major Rhye on his familiarity with Airman Pompey and the way in which he formed his opinion, leaving Major Rhye's opinion appropriately weakened and in stark contrast to appellant's duty record, a wise tactical choice well executed.

Finally, note that this commander does not say that Airman Pompey has no prospect for rehabilitation generally or in the Air Force (the *Ohrt* euphemism problem, *see also United States v. Kirk, United States v. Wilson,* and *United States v. Corraine*): He just says, "Not in my outfit."[3] That distinguishes his testimony

---

1. There is no possibility that the defense was ambushed. It was well aware of the likely testimony from Major Rhye and sought to suppress it before beginning its sentencing evidence. Having lost its motion in limine to do so, and having been clearly warned that Major Rhye's testimony would be permitted in rebuttal of Mrs. Banker's letter, it elected to proceed. Defense counsel at trial made a hard choice, and his gamble seems to have been wise, given the majority disposition.

2. The letter was admitted without objection, presumably under R.C.M. 1001(c)(3). There is no explanation in record why Mrs. Banker did not appear in person.

3. Major Rhye's testimony is perilously close to that in *United States v. Corraine,* but it remains slightly different: The first sergeant in *Corraine* said that Corraine had no rehabilitation potential, presumably anywhere, and then said that he didn't want Corraine back in his unit. Major Rhye said he didn't want Airman Pompey back,

from most other *Horner–Ohrt* cases, and that is especially important because it helps eliminate the specter of command influence:[4] This commander asked for no particular sentence or sentence component, he just opined that the prospects for rehabilitation in the old unit were bleak. He was speaking to the wrong authority, and his testimony would have been irrelevant had the defense not introduced the opinion of Mrs. Banker, but it did.[5]

### III. Time for a Change

This case gives me occasion to note for those who annually review the Manual for Courts–Martial[6] that something is wrong when sentencing procedure creates so many fine distinctions and so much opportunity for error that so often requires rehearings, typically months later, in cases in which the findings are sound and even in cases in which the sentence is otherwise appropriate but might have been a little less or a little different but for the error. It should be clear that R.C.M. 1001(b)(5) is more troublesome than it is likely ever to be worth. Thoughtful remarks about rehabilitation potential might be helpful, but

the rule permits only naked conclusions, perhaps wisely, and so we do not hear evidence of "character, morality, and determination to succeed," *United States v. Wilson*, 31 M.J. at 94, except as inferences that may be drawn from the personnel information introduced under R.C.M. 1001(c)(2). Even if more were permitted, neither our counsel nor our commanders have the expertise in penology required to make their views useful. *See generally United States v. Thomas*, 31 M.J. 669, 672 (A.C.M.R.1990). Perhaps the rule suffers a fundamental flaw; perhaps a criminal should be sentenced once according to his crime and objective personal characteristics and not successively according to something so speculative as his rehabilitation potential. *See* Fed.R.Crim.P. 32(a)(1)(A), (c).

---

but his opinion on rehabilitation potential is clearly limited to *rehabilitation in his unit*. I have no enthusiasm for the new onslaught of exploitations of such a distinction that might have followed had the majority agreed to this distinction, but it remains a critical distinction that requires a different result.

4. I note that no one has complained of command influence at any point in this case, as is necessary to introduce that issue unless influence is to be presumed. *See generally United States v. Allen*, 31 M.J. 572 (N.M.C.M.R.1990). This case seems a very innocuous setting in which to presume such an evil, and nothing in the record prompts me or my brethren to do so.

5. One might fairly ask whether it follows from my view that mistaken admission of one useless opinion requires that further time be wasted for rebuttal of that opinion through another one that is equally groundless. That is a matter for the military judge to control under Mil.R.Evid. 403 and 1101(c) and R.C.M. 1001(c)(3) and (d). I think it unwise to brand such opinions too quickly and from afar as so useless as to be irrelevant as a matter of law. Weight is a matter for the parties at trial.

6. Exec. Order No. 12,473, 3 C.F.R. 201 (1985), *reprinted in* Manual for Courts–Martial, 1984.