**UNITED STATES**

v.

**Senior Airman Cheryl L. DAVIS,
United States Air Force.**

**ACM 33515.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 Nov. 1998.

Decided 17 Jan. 2001.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth, Colonel Theodore J. Fink, and Captain Teresa L. Davis.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain Peter J. Camp.

Before YOUNG, Chief Judge, BURD, and PECINOVSKY, Appellate Military Judges.

OPINION OF THE COURT

YOUNG, Chief Judge:

The appellant pled guilty to absence without leave terminated by apprehension and wrongfully using cocaine and marijuana. Articles 86, 112a, UCMJ, 10 U.S.C. §§ 886, 912a. Her plea to the marijuana specification was conditioned upon the preservation of her motion to suppress the results of testing performed on a urine specimen she was required to give when she was ordered into pretrial confinement. We affirm.

As part of a unit sweep conducted under the Air Force Drug Testing Program, the appellant and her boyfriend, Senior Airman (SrA) Jarvis C. Knight Jr. (*United States v. Knight*, ACM 33514 (A.F.Ct.Crim.App. 29 Nov 1999) (unpub. op.)), both members of the 4th Component Repair Squadron, Seymour Johnson Air Force Base, North Carolina, provided urine specimens for testing. The tests determined that both had ingested cocaine. Law enforcement agents interviewed SrA Knight about this drug use. When SrA Knight told the appellant he had been interviewed about his cocaine use, she suspected her own urinalysis was positive and she would soon be interviewed. The appellant

packed up her two children and left the area with SrA Knight. SrA Knight and the appellant were arrested in Laramie County, Wyoming, because of this unauthorized absence.

When the appellant arrived back at her base, she was ordered into pretrial confinement. As part of the inprocessing, she was required to undergo a physical examination by medical personnel within 24 hours of entry into confinement. The medical officer was required to conduct, among other procedures, "urinalysis testing for illegal drug and narcotic use." Air Force Instruction (AFI) 31–205, *Corrections Program*, ¶ 25.3 (1 Aug 1995). The specimen provided by the appellant tested positive for the presence of tetrahydrocannabinol, the active ingredient in marijuana.

At trial, the appellant moved to suppress the admission of the test results. The prosecution claimed the urinalysis results were admissible because the specimen was taken for a valid medical purpose and as part of a valid inspection. The appellant acknowledged that the results of drug testing conducted on a urine specimen collected for a valid medical purpose are generally admissible. However, she claimed that this specimen was not collected for a valid medical purpose because there was no valid diagnostic or treatment purpose that necessitated the collection of the specimen and neither the confinement facility nor the medical personnel were notified of the testing results. The appellant also resisted the prosecution's claim that the urine collection was a valid inspection on the grounds that the medical personnel who collected the specimen labeled it as being collected for medical purposes. The military judge made extensive findings of fact and concluded that the test results were admissible under Mil.R.Evid. 312(f) and 313. On appeal, the appellant renews her attack on the admission of the test results.

█ We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Ayala,* 43 M.J. 296, 298 (1995). Although we are authorized to find facts under Article 66(c), 10 U.S.C. § 866(c), we normally defer to the military judge unless his findings are clearly erroneous. *See United States v. Vaughters,*

42 M.J. 564, 566 (A.F.Ct.Crim.App.1995), *aff'd,* 44 M.J. 377 (1996). We review his conclusions of law de novo. *Ayala,* 43 M.J. at 298.

Mil.R.Evid. 313(a) permits the admission of evidence obtained from inspections.

An "inspection" is an examination of the whole or part of a unit, organization, installation, vessel, aircraft, or vehicle, including an examination conducted at entrance and exit points, conducted as an incident of command the primary purpose of which is to determine and to ensure the security, *military fitness,* or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle. An inspection may include but is not limited to an examination to determine and to ensure ... that *personnel are present, fit, and ready for duty.* ... An order to produce body fluids, such as urine, is permissible in accordance with this rule. An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule. If a purpose of an examination is to locate weapons or contraband, and if: (1) the examination was directed immediately following a report of a specific offense in the unit, organization, installation, vessel, aircraft, or vehicle and was not previously scheduled; (2) specific individuals are selected for examination; or (3) persons examined are subjected to substantially different intrusions during the same examination, the prosecution must prove by clear and convincing evidence that the examination was an inspection within the meaning of this rule.

Mil.R.Evid. 313(b) (emphasis added). The military judge found that this seizure of the appellant's urine was for the purpose of locating contraband and was done following the report of a specific offense, for which the appellant was confined. Therefore, he applied a clear and convincing standard in determining whether the seizure was an inspection.

The appellant contends that the military judge erred by finding the urine testing was to ensure "military fitness" or that "person-

nel are present, fit, and ready for duty." She argues that military duties "are duties which advance the military mission," and the duties performed by prisoners are different—"the United States does not place its trust and confidence in prisoners to carry out the military mission." She further asserts that requiring all confinees to be tested for drugs of abuse amounts to commander-directed testing under AFI 44–120, *Drug Abuse Testing Program*, Atch 1 (1 Apr 1997). We disagree.

As the military judge noted, the admissibility of urinalysis results is governed by the facts and circumstances surrounding the collection of the specimen rather than the label given to it by those who collected it. *United States v. Pompey,* 32 M.J. 547 (A.F.C.M.R.1990), *aff'd,* 33 M.J. 266 (C.M.A. 1991). The appellant was a "part of a unit" under Mil.R.Evid. 313(b)—those placed in confinement. AFI 31–205 requires all personnel placed in confinement to be tested, thus eliminating the possibility of arbitrarily selecting a confinee for testing not required of other confinees. The regulation was not arbitrarily applied—all personnel ordered into confinement were tested. The defense has not challenged the lawfulness of the appellant's pretrial confinement and there is no evidence to suggest that ordering the appellant into pretrial confinement was a subterfuge to have her tested for drugs of abuse. *See United States v. Bickel,* 30 M.J. 277, 279 (C.M.A.1990) (upholding as inspection, results of urinalysis based on commander's policy letter requiring "[a]ny individual prescreened positive during monthly random urinalysis testing will be rescreened during the following month's urinalysis"); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983) (sustaining as inspection, urinalysis performed pursuant to Navy policy that all persons reporting to an "A" School would be tested).

Under these circumstances, we are convinced the military judge did not abuse his discretion in concluding that the urinalysis results were admissible as an inspection. We see no need to decide whether the specimen was also taken for a valid medical purpose.

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.