## UNITED STATES

v.

**Airman First Class Samantha D. BISH, United States Air Force.**

**ACM 33744.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 6 May 1999.

Decided 19 March 2001.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth and Major Stephen P. Kelly.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Lieutenant Colonel David N. Cooper.

Before YOUNG, BURD, and PECINOVSKY, Appellate Military Judges.

## OPINION OF THE COURT

BURD, Judge:

On 6 May 1999, the appellant was tried by general court-martial composed of a military judge sitting alone at Bolling Air Force Base (AFB), District of Columbia. Consistent with her pleas and a pretrial agreement (PTA), she was found guilty of four specifications, consisting of the wrongful use of ecstasy, LSD, and marijuana, all on divers occasions, and wrongful use of psilocybin, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The military judge sentenced the appellant to a bad-conduct discharge, confinement for 7 months, forfeiture of all pay and allowances, and reduction to E–1. This sentence was within the limitation of the PTA and was approved by the convening authority.

The appellant raises one issue on appeal. She claims the military judge erred when, over defense objection, he allowed the appellant's commander to testify about the appellant's rehabilitative potential. We affirm.

This case presents a classic example of trial counsel interjecting an appellate issue into a case for no good reason. The prosecution's documentary evidence on sentencing consisted of a stipulation of fact that described the offenses in detail, a personal data sheet, three enlisted performance reports that evidenced limited potential, four letters of counseling, two letters of admonition, three letters of reprimand, and a record of nonjudicial punishment, all of which pertained to disciplinary infractions by the appellant over a 16 month period leading up to her court-martial. Instead of resting on this wealth of derogatory documentary evidence, the trial counsel, with apparently little un-

derstanding of the rules regarding opinion evidence, chose to call Major Reinert, the appellant's commander, to testify about the appellant's performance and rehabilitative potential.

After the commander responded to questions by the assistant trial counsel (ATC) about his knowledge of the appellant, the following exchange occurred:

ATC: Are you aware of any disciplinary actions that have been taken since the accused was charged with the offenses in this case?

Witness (WIT): We have a—

Defense counsel (DC): —Objection, Your Honor.

Military judge (MJ): You can't ask questions—go into specific acts if you're trying to lay a basis for a rehabilitation opinion. Do you have any more questions [DC]? Did you have any in view of your objection?

DC: Yes, sir. I don't believe based upon his interaction with the accused, that he has adequate knowledge to give his opinion, I mean an occasional "hi, how are you doing" is not sufficient under [Rule for Courts–Martial] R.C.M. 1001 to lay basis for this opinion.

MJ: Okay. I'll overrule your objection. I'll note that he was the commander. That he had reviewed the personnel records, he's aware—he did visit her in the office. I think that goes to the weight to be given to his testimony as to whether or not the admissibility and I'll allow you to cross examine as to the weight to be given to that.

DC: Yes, sir.

MJ: So, your objection is overruled, you may continue.

ATC: Major Reinert, based on your review of the accused (sic) personnel information file, and your contacts with her at the job and at unit social events, do you have an opinion on the accused's performance as an Air Force member?

WIT: I think her performance—go ahead—I thought you had a question.

ATC: Please, yes or no?

WIT: Oh, yes.

ATC: What does that mean?

WIT: I think her performance up to a certain point and time was good to okay or okay to good. EPRs showed that and after the EPR closed out in the end of June 98 was when we started to see a decline.

ATC: What type of decline did you start to see?

DC: Objection, Your Honor.

MJ: She hasn't raised the issue you can't get into specific instances of misconduct.

ATC: Yes, sir. Strike the question, sir.

MJ: So, your objection's sustained. You may continue.

ATC: Do you have an opinion on the accused's potential for rehabilitation in the Air Force?

WIT: I do.

ATC: What is it?

WIT: I think rehabilitation in the Air Force is slim to none because we have tried drastic measures and stair step discipline that didn't seem to get her attention, didn't seem to take the corrected measures that we intended for it to take. So, based upon my experience, based upon the stair step discipline that we applied I don't think rehabilitation is—in the Air Force is in the future.

ATC: Do you have an opinion of the accused's potential for rehabilitation in general to become a law abiding citizen in society?

WIT: Yes, I do.

ATC: And, what is that?

WIT: In civilian life, based upon the trends and based upon what we saw in military life, I'm not real sure that rehabilitation is gonna be achieved on the outside either because our military standards seem to be more strict than on the outside. So, I'm not really sure that's my opinion, I'm not real certain what the rehabilitative nature will be on the outside.

ATC: No further questions, Your Honor.

MJ: Just note for the record, his comments regarding civilian life or that I understand that it's my decision as to wheth-

er or not the accused remains a member of the military or a punitive discharge. I did not interpret his comments as being directed towards whether or not a punitive discharge is appropriate or not appropriate. Even if it was directed towards that, I'll disregard that testimony.

A military judge's ruling on the admissibility of evidence is reviewed for a clear abuse of discretion. *United States v. Johnson,* 46 M.J. 8 (1997). Although the military judge's statements are not models of clarity, we are convinced from the record that he did not abuse his discretion in overruling the defense objection that Major Reinert did not have a sufficient foundational knowledge of the appellant to state an opinion regarding her rehabilitative potential. We agree with the trial judge that the witness did have sufficient information and knowledge (and therefore, a rational basis) to state such an opinion. R.C.M. 1001(b)(5)(B); *United States v. Ohrt,* 28 M.J. 301, 304 (C.M.A.1989).

Judge Cox, of the United States Court of Military Appeals (now United States Court of Appeals for the Armed Forces), made a remark in *Ohrt* that bears repeating: "The only appropriate witness is one who can be helpful to the court-martial when it acts in making 'the determination of a fact in issue.'" *Ohrt,* 28 M.J. at 303 (quoting Mil. R.Evid. 701; citing *United States v. Susee,* 25 M.J. 538, 540 (A.C.M.R.1987)). This principle is incorporated as a requirement of R.C.M. 1001(b)(5)(B), which provides, in relevant part, that "[t]he witness or deponent providing opinion evidence regarding the accused's rehabilitative potential must possess sufficient information and knowledge about the accused to offer a rationally-based opinion **that is helpful to the sentencing authority.**" (Emphasis added.)

Our decision upholding the military judge's ruling carries with it a determination that Major Reinert's opinion regarding the rehabilitative potential of the appellant was helpful to the sentencing authority. However, the trial counsel's questions, which drew a distinction between rehabilitative potential in the Air Force and in civilian life, rendered Major Reinert's testimony improper.

R.C.M. 1001(b)(5)(D); *United States v. Williams,* 50 M.J. 397, 400 (1999). *See also United States v. Armon,* 51 M.J. 83, 87 (1999) and cases cited therein; *United States v. Wilson,* 31 M.J. 91, 94 (C.M.A.1990).

R.C.M. 1001(b)(5)(D) provides:

(D) *Scope of opinion.* An opinion offered under this rule is limited to whether the accused has rehabilitative potential and to the magnitude or quality of any such potential. A witness may not offer an opinion regarding the appropriateness of a punitive discharge or whether the accused should be returned to the accused's unit.

This rule expressly prohibits the prosecution from presenting both direct and indirect opinions on whether the accused should be punitively discharged. *See Williams,* 50 M.J. at 400 (stating rule expressly prohibits direct and indirect opinions on punishment). As Judge Cox said in *Ohrt:* "The use of euphemisms, such as 'No potential for continued service'; 'He should be separated'; or the like are just other ways of saying, 'Give the accused a punitive discharge.'" *Ohrt,* 28 M.J. at 305, *quoted in Williams,* 50 M.J. at 399. As the rule falls under R.C.M. 1001(b)—matter to be presented by the prosecution—it does not appear to prohibit the defense from offering evidence that a member of the accused's unit wants him back. *See United States v. Aurich,* 31 M.J. 95, 96–97 (C.M.A.1990) (dictum). *But cf. United States v. Ramos,* 42 M.J. 392, 396 (1995) (suggesting the rule against direct or indirect opinions on whether accused should be punitively discharged may apply to defense as well as prosecution) (citing *Ohrt*).

Over a decade ago, this Court warned practitioners to heed the words of Judge Cox about the use of euphemisms to improperly place opinions on punishment before the sentencing authority. *See United States v. Freeman,* 29 M.J. 865, 867 (A.F.C.M.R.1989). *See also United States v. Diamond,* 30 M.J. 902 (A.F.C.M.R.1990); *United States v. Thomas,* 31 M.J. 669 (A.C.M.R.1990). Two days after the release of *Thomas,* our superior court said:

R.C.M. 1001(b)(5) limits a witness' testimony to an opinion concerning "rehabilitative

potential." It does not permit a full, logical explanation of the witness' opinion except on cross-examination. R.C.M. 1001(b)(5) contemplates one question: "What is the accused's potential for rehabilitation?"—and one answer: "In my opinion, the accused has _____ (good, no, some, little, great, zero, much, etc.) potential for rehabilitation."

*Aurich*, 31 M.J. at 96.[1] Not long after these cases, our Court took the opportunity to express the frustration that R.C.M. 1001(b)(5) was creating unwarranted litigation. *See United States v. Pompey*, 32 M.J. 547, 550 (A.F.C.M.R.1990), *aff'd*, 33 M.J. 266 (C.M.A.1991).

R.C.M. 1001(b)(5) was substantially amended in 1994. Several of the decisions of our superior court concerning the use of evidence on rehabilitative potential are recognized for spawning the amendment. *See* Drafter's Analysis, *Manual for Courts Martial, United States (MCM)*, A21–70 (2000 ed.) and cases cited therein. The rule now defines rehabilitative potential:

> (5) *Evidence of rehabilitative potential.* Rehabilitative potential refers to the accused's potential to be restored, through vocational, correctional, or therapeutic training or other corrective measures to a useful and constructive place **in society**.

R.C.M. 1001(b)(5) (emphasis added).

In light of the 1994 changes to R.C.M. 1001(b)(5) and the decisions of our superior court since, culminating in *Williams* and *Armon*, we hold that rehabilitative potential testimony that narrows the context of the opinion from the permitted general context of "in society" is improper. To say that an accused has no rehabilitative potential **in the Air Force** is equivalent to saying, "No potential for continued service." *Ohrt*, 28 M.J. at 305.

■ We note that the only objection raised by the defense at trial to Major Reinert's testimony was foundational. While the appellant seeks to blur the distinction in her

Assignment of Errors, trial defense counsel made no objection to the scope of Major Reinert's testimony. By failing to object to the scope of the commander's opinion, the appellant forfeited this error. In the absence of plain error, we will not reverse. Under a plain error analysis, the standard of review is whether the admission of such testimony materially prejudiced a substantial right of the appellant. *Armon*, 51 M.J. at 87; *Williams*, 50 M.J. at 400 (citing *United States v. Powell*, 49 M.J. 460 (1998)).

■ We find no prejudice in this case. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The trial was before a military judge alone. A military judge is presumed to know the law and apply it correctly. *United States v. Robbins*, 52 M.J. 455, 457 (2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 177, 148 L.Ed.2d 122 (2000). Moreover, in this case, the military judge stated he would not consider the testimony to the extent that it could be interpreted as expressing an opinion on the appropriateness of a punitive discharge. Additionally, other evidence properly before the court demonstrated the appellant's poor disciplinary record. This evidence both supports the approved sentence and "diminishe[s] the importance of [the] appellant's right to preclude *Ohrt* euphemism evidence in [her] case." *Williams*, 50 M.J. at 401.

The approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

---

1. Army practitioners got the message that, "[a]s *Aurich* demonstrates, our military appellate courts are not very enamored with R.C.M. 1001(b)(5). Counsel must ask themselves, 'Is it worth it?'" *United States v. Aurich: The Scope of Rehabilitative Potential Opinion Questions*, Army Law., Dec. 1990, at 32–3. *See also* Major Lauren K. Hemperley, *Looking Beyond the Verdict: An Examination of Prosecution Sentencing Evidence*, 39 A.F.L.Rev. 185, 197–205 (1996).