**UNITED STATES**

v.

**Sergeant John P. WILSON,
FR529–02–7637, United
States Air Force.**

**ACM 29046.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 Sept. 1990.

Decided 24 May 1991.

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant

Colonel Brenda J. Hollis, and Major Ann M. Mittermeyer.

Before LEONARD, RIVES and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Sergeant Wilson was caught in an FBI "sting" designed to net bigger fish at Ogden Air Logistics Center, the web of which was fine enough to catch his 17 months of diverse thefts and nine sales of military property. He was convicted according to his pleas of guilty [1] and now asserts errors relating only to the post-trial handling of his case. We find no errors and affirm.

Appellant has four complaints about the staff judge advocate's post-trial recommendations under R.C.M. 1106 to the convening authority: that the recommendations incorrectly state the maximum sentence at trial, that the staff judge advocate's addendum to his recommendations misinforms the convening authority that he "should" (not "must") consider the appellant's clemency submissions, that the record does not disclose that the convening authority considered the staff judge advocate's addendum to his prior recommendations, and that there is no evidence of service on the appellant as required by R.C.M. 1106(f)(1).

 We assume that two of the statements in the recommendations were mistakes, as appellant urges. First, the military judge found that the maximum punishment was limited by multiplicity to 90 years, but the advice mistakenly reported the maximum considering them separately, 100 years. [2] This mistake was waived by the failure of the trial defense counsel to correct it in his response under R.C.M. 1106(f)(4) to the recommendations. R.C.M. 1106(f)(6); *United States v. Ralbovsky*, 32 M.J. 921 (A.F.C.M.R.1991). *See also United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975) (establishing the waiver rule that was incorporated in R.C.M. 1106(f)(6), though under the prior statute). *See generally United States v. Jordan*, 32 M.J. 672 (A.F.C.M.R.1991).

 The other mistake assigned is that the addendum to the recommendations informed the convening authority that he "should read and consider all [the defense submissions]." If "should" can be taken in this context as hortatory (as opposed to politely deferential but clearly instructional in context) then it was the wrong word. [3] A convening authority has no choice about considering the defense submissions; he has a statutory duty to consider them. Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (1988). *See also* R.C.M. 1107(b)(3)(A)(iii). To advise him that he "should" do so was probably incorrect. [4] Assuming that the

---

1. The court-martial (composed of the military judge alone) sentenced him to be discharged from the service with a bad conduct discharge, to be confined for 18 months, and to be reduced to E–1. The convening authority approved the sentence as adjudged.

2. We assume, without deciding, that a staff judge advocate should inform the convening authority of the maximum punishment with multiplicity taken into consideration. The standard form used to begin recommendations, Air Force Form 242, implies as much at item 34's title: "Maximum *imposable* sentence for offense convicted upon." (Emphasis ours.) *See* Air Force Regulation 111–1, Military Justice Guide, paragraph 15–5.a. (30 September 1988), which requires use of that form. Presumably, "imposable" punishments are those calculated after legal limitations are applied. We note, however, that neither the code nor R.C.M. 1106(d)(3) requires either version of this information. *See* Article 60(d), UCMJ, 10 U.S.C. § 860(d)(1988).

3. Drafters of recommendations would do well to follow the word choices of the code and the Rules for Courts–Martial closely so that we are not compelled to develop a body of appellate law like that which, before 1984, required great passages of boilerplate the substance of which was generally ignored, but the form of which was carefully scrutinized on appeal.

4. Our prior decisions in *United States v. Foy*, 30 M.J. 664 (A.F.C.M.R.1990); *United States v. Pelletier*, 31 M.J. 501 (A.F.C.M.R.1990); and *United States v. Godreau*, 31 M.J. 809 (A.F.C.M.R.1990) (en banc) seem often to be misconstrued. *Foy* and its progeny simply suggested a formula to avoid the ubiquitous *Craig* error, that the record fails to show that the defense submissions were conveyed to and considered by the convening authority. *United States v. Craig*, 28 M.J. 321 (C.M.A.1989). Under the *Foy* formula, proper advice and an inventory of the defense submissions as attachments avoids any ambiguity. The *Foy* method is not the only solution, and the

word choice was a mistake, we note that it is not waived (unlike the mistake above) because it occurred in the addendum, and the record gives no suggestion that the addendum was served for comment on the defense. However, if there is an error here, it is moot: Regardless of the advice given to the convening authority, his affidavit (filed by appellee) establishes that he did consider the defense submissions.

■ Equally brief is our attention to the failure of the record to show that the convening authority considered the staff judge advocate's addendum to his prior recommendations. *See generally* Article 60(d), UCMJ, 10 U.S.C. § 860(d)(1988); R.C.M. 1107(b)(3)(A)(ii). Appellant points out that the convening authority was asked to initial it to record his attention to it, but he didn't. Appellant therefore infers that the convening authority did not see the addendum. The omission is also important because the defense post-trial submissions were conveyed to the convening authority as attachments to the addendum: If he didn't see the addendum, logic suggests that he didn't see the defense submissions.[5] *See generally* Article 60(c)(2), UCMJ, 10 U.S.C.

§ 860(c)(2)(1988); R.C.M. 1107(b)(3)(A)(iii); *United States v. Craig,* 28 M.J. 321 (C.M. A.1989). The convening authority's affidavit fills the gap, if there was one.[6] *See United States v. Youngren,* 28 M.J. 255 (C.M.A.1989) (summary disposition); *United States v. Godreau,* 31 M.J. 809 (A.F.C. M.R.1990) (en banc). We are satisfied that the convening authority considered the recommendations and the defense submissions and that his action was timely and proper.

■ Appellant also complains that the record contains no indication that he was served with a copy of the recommendations. R.C.M. 1106(f)(1) formerly required service of the recommendations only upon the defense counsel, but it was amended effective with sentences adjudged on and after 1 April 1990. Exec. Order No. 12,708, 3 C.F.R. ___, 55 Fed.Reg. 11353 (1990) (change 4, Manual for Courts–Martial (1984)).[7] The amended rule requires service upon the accused, and it governs this case, in which sentence was adjudged well after the effective date. The record did not, when it arrived, include proof of service, but that annoying gap[8] has been

---

recommendations may even be silent on this point, so long as the record somehow shows that the defense submissions were conveyed to and considered by the convening authority, for example by the presence of the convening authority's initials throughout the defense papers. *Foy* and its progeny were procedural suggestions, not substantive requirements for the content of recommendations. We did not intend to imply that the absence of such specific advice would itself constitute either a *Craig* error or a new defect in the recommendation.

5. One of the several such pages is initialed, and so the question hangs over only the remainder.

6. The papers comply with all our advice in *United States v. Foy,* 30 M.J. 664, 665–66 (A.F.C. M.R.1990), except the use of "should" instead of "must consider." *See also United States v. Godreau,* 31 M.J. 809, 811–12 (A.F.C.M.R.1990) (en banc). *Cf. United States v. Pelletier,* 31 M.J. 501 (A.F.C.M.R.1990) (misleading advice). Had the drafter gotten that word correctly, the advice to initial the addendum would have been unnecessary, and so would the affidavit.

7. *See* Article 60(d), UCMJ, 10 U.S.C. § 860(d)(1988), Military Justice Act of 1983, Pub.L. 98–209, § 5(a)(1), 97 Stat. 1393, 1395.

8. We need not decide whether proof of service is required. *Cf.* R.C.M. 1106(f)(1), Discussion. The Army Court of Military Review holds "that the absence of a receipt from the appellant for a copy of the staff judge advocate's recommendation does not evidence a failure to comply with Rule for Courts–Martial 1106(f)(1) because such affirmative proof of service is not required." *United States v. Roland,* 31 M.J. 747, 749 (A.C.M. R.1990). *See also United States v. Cook,* 31 M.J. 745 (A.C.M.R.1990); *United States v. Diaz–Carrero,* 31 M.J. 920 (A.C.M.R.1990) (testing for prejudice). On the one hand it is disagreeable to find the mere absence of a receipt—a trivial administrative matter—asserted as error. Facing the same situation but without a post-trial affidavit as a Bandaid, the Army Court applies a presumption of regularity to place the evidence in equipoise and concludes, "We have been presented no evidence which rebuts the presumption that the staff judge advocate complied with the service requirements...." *Roland,* 31 M.J. at 750. One could as easily say that the burden of putting the matter into controversy on appeal is upon the appellant, who can do so simply by saying in an affidavit, "I was not served." The important matter is that the accused had a copy of the record, not that his receipt for it was put in the record. On the other hand, the counterpart—receipt for service on the defense counsel—has its origin in *United*

cured by another affidavit. There is no error.

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record,[9] are

AFFIRMED.

Senior Judge LEONARD and Judge RIVES concur.

---

*States v. Goode,* 1 M.J. 3, 6 (C.M.A.1975), which was explicit: "Proof of such service ... shall be made a part of the record of the proceedings." We are chagrined that our legal community has not developed the astute, routine habit of our civilian colleagues, collecting receipts or certifying service. *See generally, United States v. McClelland,* 25 M.J. 903, 905 (A.C.M.R.1988) (recommending adoption of a certificate of service form). Such craftsmanlike attention to detail would avert any need to consider further whether their absence alone constitutes error.

9. Once again we are happy to note our appreciation for the fine work of the court reporter who transcribed and compiled this record. In these days of transcripts poorly proofed and faintly printed with tired dot-matrix ribbons, we are happy to have had the benefit of a letter perfect transcript perfectly printed with dark, dense print on high quality paper and well assembled and bound. The reporter divided the record sensibly into three volumes—pre- and post-trial papers, the transcript of the trial, and the exhibits—that serve our review well. We who must read and consider the record most carefully appreciate her work.