**UNITED STATES, Appellee,**

v.

**Todd E. AURICH, Private, U.S. Army, Appellant.**

**No. 63,386.**
**CM 8802273.**

U.S. Court of Military Appeals.

Argued Feb. 14, 1990.

Decided Sept. 20, 1990.

For Appellant: *Captain Ralph L. Gonzalez* (argued); *Colonel Robert B. Kirby* and *Captain Timothy P. Riley* (on brief); *Lieutenant Colonel Russell S. Estey, Captain James Kevin Lovejoy, Captain Pamela J. Dominisse.*

For Appellee: *Captain George R. Johnson* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief).

PER CURIAM:

At issue is whether the military judge erred in permitting appellant's company commander to testify over objection that he did not want appellant back in his unit. The separate opinion by Judge Sullivan sets out the challenged testimony *verbatim.*

■ The Court unanimously agrees that admission of this testimony in this trial by military judge alone did not constitute reversible error. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a); *United States v. Montgomery*, 20 USCMA 35, 42 CMR 227 (1970). For reasons expressed in the separate opinion, the Court does not agree on whether the testimony of appellant's commander was relevant and probative to prove or disprove appellant's rehabilitative potential. RCM 1001(b)(5) and Mil.R.Evid. 401 and 402, Manual for Courts–Martial, United States, 1984.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX and Chief Judge EVERETT agree:

Mil.R.Evid. 402 provides that "[a]ll relevant evidence is admissible," with certain exceptions. According to Mil.R.Evid. 401:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

■ The fact that is of consequence under RCM 1001(b)(5) is whether appellant has "rehabilitative potential." *United States v. Ohrt*, 28 MJ 301 (CMA 1989); *United States v. Horner*, 22 MJ 294, 296 (CMA 1986). We are of the view that a commander's statement that *he does not want an accused back in his unit*—absent a full, logical, and acceptable explanation establishing that the reason he does not want such accused in the unit is his lack of rehabilitative potential—proves absolutely nothing and is, therefore, inadmissible.

■ RCM 1001(b)(5) limits a witness' testimony to an opinion concerning "rehabilitative potential." It does not permit a full,

logical explanation of the witness' opinion except on cross-examination. RCM 1001(b)(5) contemplates one question: "What is the accused's potential for rehabilitation?"—and one answer: "In my opinion, the accused has _____ [good, no, some, little, great, zero, much, etc.] potential for rehabilitation." There are numerous adjectives which might describe an individual's potential. Of course, it is beyond cavil that such a witness must have a proper foundation for his assessment, but that may only be explored on cross-examination. *United States v. Kirk*, 31 MJ 84 (CMA 1990).

There are at least two, perhaps more, situations where this type of opinion is relevant and helpful:

First, if a commander *does want* an accused back in his unit. As Judge Sullivan has pointed out, the fact that a member of an armed force has sufficient trust and confidence in another member is often a powerful endorsement of the character of his fellow soldier. This favorable testimony has long been relevant in courts-martial. *United States v. Vogel*, 17 USCMA 198, 37 CMR 462 (1967); RCM 1001(c)(1)(B).

However, the contrary may or may not be true. *United States v. Ohrt, supra* at 303. As we have seen, the squadron commander in *Ohrt* was not concerned about Sergeant Ohrt's rehabilitative potential; he just did not want drug abusers in his squadron. Perhaps, he had another explanation for his opinion, as the dissent in *Ohrt* concluded, but he did not articulate his reasons on the record. *See United States v. Cherry*, 31 MJ 1 (CMA 1990); *United States v. Kirk, supra*.

■ A second area where this type of opinion testimony is relevant and helpful is rebuttal.* Thus if an accused "opens the

---

* Notwithstanding the fact that RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984, permits the Government to introduce, by way of opinion testimony, evidence of an accused's "rehabilitative potential," we believe it to be the rare case where it is necessary for the Government to introduce such opinions unless the accused places such potential in issue. In *United States v. Ohrt*, 28 MJ 301, 304 (CMA 1989), we rejected the notion that "rehabilitative potential" testimony is primarily focused toward the question of whether an accused should be retained or discharged. We recognize that a punitive discharge *results* in an accused being separated from service, but the purpose of the *punitive* discharge is to *punish*.

door" by bringing witnesses before the court who testify that they want him or her back in the unit, the Government is permitted to prove that that is not a consensus view of the command. As Judge Sullivan points out, 31 MJ at 98, this type of testimony and rebuttal have long been part of military trials. *United States v. Vogel, supra* at 199, 37 CMR at 463. But this testimony has not been historically offered as evidence of "rehabilitative potential." This form of testimony has been classic "mitigation" evidence. RCM 1001(c)(1)(B). Indeed, as we noted in *United States v. Ohrt, supra* at 303, it was the alleged suppression of such favorable mitigation evidence and testimony which gave rise to the allegations of command influence in the Third Armored Division in the early 1980s. *United States v. Thomas,* 22 MJ 388 (CMA 1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *see also United States v. Levite,* 25 MJ 334 (CMA 1987).

Lastly, notwithstanding the fact that perhaps a particular commander's testimony might achieve "logical relevance" under Mil.R.Evid. 401 and 402, is this the type of testimony which should be permitted in the courtroom? We are of the considered opinion that commanders should rarely testify adversely about an accused based solely on that "commander's opinion" of the accused and his crime. Sending commanders into the fray, opining that they do not want an accused in their unit, is merely the flip side of suppressing favorable testimony, absent a showing of some particular relevance. Such testimony has no place in a court-martial until it is relevant to the proceedings; and even when a military judge might be convinced that somehow it is going to be helpful to the trier of fact to have an accused's commander tell other officers that "I do not want this accused in my unit," the situation is fraught with danger of undue and unlawful influence. If we let in the testimony of the company commander, the one who initiates charges in many instances, can we also permit the battalion commander, the brigade commander, the division commander, and the corps commander to express their opinions? Where is the alpha and where is the omega?

Should an accused receive greater punishment merely because his commander does not want him? We think not. Accordingly, we hold that the testimony in question should not have been admitted in

Having rehabilitative potential is a mitigating factor. Lacking rehabilitative potential is not an aggravating factor. In other words, if an accused demonstrates potential for rehabilitation, including continued service, then an appropriate sentence can be fashioned to take advantage of that potential. It may be appropriate in such a case not to punish an accused by a punitive discharge. On the other hand, an accused should not receive a more severe sentence than otherwise generally warranted by the offense, the circumstances surrounding the offense, his acceptance or lack of acceptance of responsibility for his offense, and his prior record. In other words, if an offense does not ordinarily warrant a punitive discharge, then it would be inappropriate to award such a discharge to an accused because he "lacked rehabilitative potential." A court-martial is not an administrative discharge proceeding where members are discharged for unfitness or unsuitability for continued military service.

A great percentage of the cases we see are guilty-plea cases. Therefore, sentencing is certainly the most frequent task, if not the most important responsibility, of military judges or court members. Regardless of how many cases a military judge may have or a panel may hear, each accused, indeed the entire military community, deserves that thoughtful and intelligent consideration be given each sentence. We are not engaged in a game where the score is counted by the "toughness" of the sentence or whether trial counsel "got the discharge." We are engaged in an aspect of national defense which has a legitimate and ethical purpose—to maintain good order and discipline in our armed forces. It has been said that

to maintain the discipline essential to perform its mission effectively, the military has developed what "may not unfitly be called the customary military law" or "general usage of the military service." [T]he [Supreme] Court has approved the enforcement of those military customs and usages by courts-martial from the early days of this Nation[.]"

*Parker v. Levy,* 417 U.S. 733, 744, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974) (citation omitted).

We would urge the military community to remain faithful to the role of the court-martial as a tool of *justice* and *discipline,* a tool which encourages men and women to obey lawful orders and the law, and not give the system over to personnel administration.

evidence. However, we are satisfied, in this judge-alone trial, that this error was not prejudicial. Art. 59(a) and *United States v. Montgomery, supra.*

The decision of the United States Army Court of Military Review is affirmed.

SULLIVAN, Judge (concurring in part and dissenting in part):

Appellant was tried by a military judge sitting alone as a special court-martial at Aschaffenburg, Federal Republic of Germany, on October 7, 1988. In accordance with his pleas, he was found guilty of one specification each of using marijuana and of distributing marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The judge sentenced appellant to a bad-conduct discharge and confinement for 3 months. The convening authority approved the adjudged sentence, and the Court of Military Review affirmed in a short-form opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED, IN LIGHT OF *UNITED STATES V. OHRT*, 28 MJ 301 (CMA 1989), BY PERMITTING APPELLANT'S COMMANDER TO TESTIFY, OVER DEFENSE OBJECTION, THAT HE DID NOT WANT APPELLANT BACK IN HIS UNIT.

I would hold that the military judge did not prejudicially err in permitting such testimony under the circumstances of the present case. If error did occur, it clearly was not prejudicial. Art. 59(a), UCMJ, 10 USC § 859(a). *See United States v. Sanford,* 29 MJ 413, 415 (CMA 1990).

On sentencing, the prosecution introduced, without defense objection—a copy of a record of field-grade punishment under Article 15, UCMJ, 10 USC § 815, administered to appellant on June 28, 1988. The offense for which he received nonjudicial punishment was wrongful use of marijuana between April 3 and May 3, 1988. In addition, it introduced a stipulation of fact concerning the offenses for which appellant pleaded guilty at this court-martial. He admitted using marijuana at various places between May 1, 1987, and July 21, 1988. He also admitted distributing four grams of hashish to military personnel on post in July of 1988. The prosecution finally called Captain Karlus Cozart, appellant's company commander. He testified that he had known appellant since March or April 1988, had "daily contact with" him, and had sufficient opportunity to form an opinion on his duty performance. He opined that appellant's "duty performance [was] substandard" and that he had no "rehabilitative potential."

When the prosecution asked appellant's commanding officer an additional question, the following occurred:

Q. Do you want Private Aurich back in your unit, Captain Cozart?

DC: Objection, Your Honor, that's impermissible as well.

MJ: Overruled.

DC: *U.S. v. Horner* case.

MJ: Well, please, if there is a case, may I see it?

DC: Yes, Your Honor [handing case to the military judge].

MJ: You said Warner, it's *Horner.*

DC: Yes, Your Honor, it's *Horner.*

MJ: 22, 294 C.M.A.1986.

DC: Your Honor, that case defines rehabilitative potential.

MJ: Well, where in here does it say that the Government cannot ask, or the witness cannot respond to the question of whether or not he would want the accused back in his unit?

DC: Well, it does not, Your Honor. It defines rehabilitative potential.

MJ: Just as I defined it a moment ago.

DC: That's correct, Your Honor. Well, in that case, I would change the basis for my objection to be relevance then. He's already—he's established everything that he's established under Rule for Courts–Martial 1001. He's established—he's given his opinion as to duty performance, he's given his opinion as to rehabilitative potential.

Whether he wants him back in his unit or not is irrelevant at this point.

MJ: Captain Eiche [TC]?

TC: We believe it is in fact relevant, Your Honor. There are some people that, I think it is possible to think that somebody can't be rehabilitated in the Army, but you might want them, or you could conceive of somebody that would not be rehabilitated, but you might want them back in your unit.

MJ: Captain Romans [DC]?

DC: I'm not sure I understand Captain Eiche's argument.

MJ: Well, I see his argument being that there might be two levels of rehabilitative potential, but please proceed. —One, in the Army and one outside the Army, which I don't necessarily agree with or buy, but apparently the Government—

DC: Well, Your Honor, in that, I would—the defense position is that to view his rehabilitative potential is in general, not in or out of the Army. And anything a witness has to say about whether he wants him back in his unit or not doesn't go to that version of rehabilitative potential, that being in general.

MJ: *Would you agree that if the Government would ask the question, do you feel that confinement would or would not have any value in this case, not that I would allow any witness to substitute for the court in opposing [sic] a sentence,* that that question would be permissible, as to whether or not confinement in and of itself would be of any value in a particular case, as to whether or not for either side might give an opinion as to whether confinement would be beneficial or any other form of punishment, not singling that one out in any particular way?

DC: Your Honor, then I would, the defense position in that case would be that no, that's not permissible.

MJ: And why is that not permissible?

DC: Invading the providence of the court. It's up to the court to determine whether or not confinement is appropriate and if so, to what degree.

MJ: *I see where you're coming then from* [sic]. As again, I overruled your objection once, and I overrule it again. Please proceed, Captain Eiche.

\* \* \* \* \* \*

Q. *Captain Cozart, would you want Private Aurich back in your unit?*

A. *No, I would not.*

(Emphasis added.)

— — —

My starting point in resolving the granted issue is to particularly delineate appellant's objections to the testimony of Captain Cozart that he did not want appellant back in his unit. At trial, defense counsel asserted that this testimony went beyond the opinions of duty performance and rehabilitative potential expressly authorized by RCM 1001(b)(5), Manual for Courts-Martial, United States, 1984. On appeal, appellate defense counsel asserts that this testimony was not relevant to show a valid sentencing consideration (*see United States v. Antonitis,* 29 MJ 217 (CMA 1989)), and it constituted a "euphemism" for impermissible comment from the commander that a punitive discharge was appropriate. *See United States v. Ohrt, supra* at 305. All these attacks on Captain Cozart's testimony I would reject.

RCM 1001(b)(5) states:

(5) *Evidence of rehabilitative potential.* The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

There is no express requirement that either of the above opinions be couched in the precise language of the rule. Moreover, there is no prohibition against the witness' stating the degree of certitude with which

he holds these opinions or communicating them in a more comfortable or more convenient jargon. *See generally* E. Imwinkelried, P. Giannelli, F. Gilligan, and F. Lederer, *Courtroom Criminal Evidence* § 1411 at 373 (1987). Finally, *United States v. Horner*, 22 MJ at 296, recognized the broad meaning of "rehabilitative potential" as intended in this Manual provision. However, it did not purport to prohibit all comments on military "rehabilitative potential" as a component part of the bigger picture, assuming a proper basis for such an opinion had been established. Accordingly, I would hold this testimony was authorized under RCM 1001(b)(5).

Turning to appellant's second argument, the question again arises as to the purpose for which the prosecution offered the return-to-unit testimony of Captain Cozart. *See* Mil.R.Evid. 401 and 402, Manual, *supra*. Trial counsel indicated that this testimony was relevant to show the witness' opinion of appellant's lack of military rehabilitative potential. As noted above, I agree that this is a valid sentencing consideration at a court-martial as a component of the accused's "character and potential" in general. *See United States v. Horner, supra* at 296; *United States v. Ohrt, supra* at 303. I also would hold that this particular comment directly and rationally relates to this sentencing concern. It provides a particular insight into the accused's personal circumstances in the military context. *See United States v. Vandelinder*, 20 MJ 41, 44–45 (CMA 1985).

This type of opinion testimony, either for or against a military accused, is not something new in the military justice system. *See United States v. Vogel*, 17 USCMA 198, 199, 37 CMR 462, 463 (1967); *United States v. Guy*, 17 USCMA 49, 37 CMR 313 (1967); *United States v. Robbins*, 16 USCMA 474, 477–78, 37 CMR 94, 97–98 (1966). The above-cited cases make clear that such testimony could be introduced by an accused to show his character and thus mitigate his punishment awarded at a court-martial. *See generally* para. 75c(4), Manual for Courts–Martial, United States, 1951. *See also United States v. Barfield*, 22 USCMA 321, 46 CMR 321 (1973). Moreover, if the defense opened the door on this issue, the prosecution was entitled to introduce unfavorable opinion testimony as a matter in rebuttal. *See United States v. Blau*, 5 USCMA 232, 241–44, 17 CMR 232, 241–44 (1954). RCM 1001(b)(5) changed this practice only to the extent that it permitted the prosecution *sua sponte* to introduce character testimony in sentencing rather than simply respond to defense proffers on this issue. *See* Drafters' Analysis of RCM 1001(b)(5), 1984 Manual, *supra* at A21–64 (Change 3). Accordingly, the challenged testimony of Captain Cozart was relevant to a valid sentence consideration.

In my view, the President in promulgating RCM 1001(b)(5), *see* Art. 36(a), UCMJ, 10 USC § 836(a), clearly authorized a person who has sufficient knowledge of the accused and his military service to come into a court-martial and state his or her opinion of the past work record and the future work potential of the accused. That person can be a commander if he or she possesses a sufficient basis under *Ohrt* and *Horner.* The commander with a sufficient basis should be allowed to state whether the accused has the potential to be restored to his former place in the commander's military unit. Custom has shown this to be a common measure of rehabilitation in the military.

There are limits to this testimony. For instance, a company commander testifying about an accused's rehabilitation should *not* be allowed to go beyond the established basis for his opinion. Thus, an infantry company commander normally will have no basis for the statement, "There is no place in the Army for the accused." The accused may well have no potential to return to the infantry company, but he may have great potential in another part of the Army which has a separate mission and different skills from those of an infantryman. The commander can only give his opinion with regard to his unit, not as to all the other units in the Army of which he has no direct knowledge.

Appellant's final contention is that the prosecution's question on this matter was a "subterfuge" for parading the commander's view on a punitive discharge before the members. *See generally* Art. 37, UCMJ, 10 USC § 837; *see also United States v. Donnelly*, 13 MJ 79, 83 (CMA 1982). The commander's response, he also suggests, was a euphemism or another way of saying, "Give the accused a punitive discharge." *See United States v. Ohrt, supra* at 305. Accordingly, a principal concern becomes the import of Captain Cozart's particular response in terms of common sense and military realities. *See United States v. Ohrt*, 26 MJ 578, 583 (AFCMR 1988)(Lewis, Foray, Sessoms, and Blommers, JJ., dissenting).

I first note that there was no evidence in this case that the question or response concerning return to the unit employed code words signifying the need for a punitive discharge. Moreover, there was no evidence that the prosecutor or the witness intended to convey such an impermissible suggestion to the court-martial. Finally, for the reason stated below, I find that this challenged testimony of Captain Cozart did not ineluctably imply that he wanted the court-martial to award appellant a punitive discharge. *Cf. United States v. Ohrt*, 28 MJ at 304.

In prior cases this Court has been concerned with testimony of commanders that apparently advocated an accused's separation from military service or a branch thereof. In *United States v. Horner*, 22 MJ at 295, the challenged testimony was, "I don't think he should be allowed to stay in the Army." In *United States v. Ohrt, supra*, it was, "I believe he does not have potential" "for continued service in the United States Air Force."[1] In *United States v. Antonitis, supra* at 219, the testimony was, "I don't think she should be in the Army." This purported language of separation coupled with recognition of the court-martial's limited power to separate by means of punitive discharge led a majority of this Court to conclude such testimony constituted an impermissible recommendation for a punitive discharge by the commander.

Captain Cozart's testimony on his lack of desire for appellant to return to his unit is not so categorical. Admittedly, it does convey the opinion of the commander that appellant's past duty performance and potential for future performance of this same military duty were poor. However, to this extent it was cumulative of the more direct, unobjectionable statements of the commander to the same effect. *See United States v. Sanford*, 29 MJ 413, 414 (CMA 1990). In any event, such testimony plainly stops short of advocating separation, never mind a punitive one, as done in *United States v. Ohrt, supra*, and its progeny. Finally, even if it be unreasonably construed to this end,[2] this was a trial without members, and I am confident that the judge rejected any impermissible overtures of that type. *See generally United States v. Vangelisti*, 30 MJ 234 (CMA 1990); *United States v. Harper*, 22 MJ 157, 164 (CMA 1986). In fact, the military judge in this case expressly acknowledged this point. Accordingly, there was no prejudicial error in this case. *See generally United States v. Sanford, supra* at 415.

For these reasons, I agree with the majority that the decision below should be affirmed.

---

1. In *United States v. Ohrt*, 28 MJ 301, 307 (CMA 1989), this Court also noted that the commander testified on a question from a member "that I would have no more use for your [drug user] services in my command." This testimony was not the subject of the Court's euphemism analysis.

2. Strictly speaking, an argument could be made that a commander's mere presence on the witness stand for the prosecution in sentencing signaled his intent that a punitive discharge should be awarded. Moreover, it might also be argued that a commander's testimony that an accused has poor rehabilitative potential somehow signals his intent that a punitive discharge be awarded. However, I do not broadly read *United States v. Ohrt, supra,* beyond its facts to bar any and all testimony by the commander on sentencing. In any event, cautionary instructions to members would clearly be prudent even in those cases where the commander does not urge separation.