**UNITED STATES**

v.

**Dennis BOLDEN, 260 23 1942 Damage Controlman Fireman (E–3), U.S. Navy.**

**NMCM 91 1491.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 April 1991.

Decided 16 Dec. 1991.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

LCDR D.P. Fry, JAGC, USNR–R, Appellate Defense Counsel.

LCDR James C. Funk, JAGC, USNR–R, Appellate Defense Counsel.

LT K.S. Anderson, JAGC, USNR, Appellate Government Counsel.

Before STRICKLAND, ORR and MOLLISON, JJ.

MOLLISON, Judge:

We have examined the record of trial, the assignment of error,[1] and the Government's reply thereto, and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

At trial by special court-martial the appellant pled guilty to one count of failing to go to his appointed place duty, one count of willful disobedience of a chief petty officer, and two counts of wrongful use of marijuana in violation of Articles 86, 91, 112a, respectively, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 891, 912a. The military judge sitting alone sentenced the appellant to be confined for 30 days, to be reduced to pay grade E–1, and to be discharged with a bad-conduct discharge. The convening authority approved the sentence without modification.

---

1. THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT IN ADMITTING EVIDENCE REGARDING APPELLANT'S PO-TENTIAL FOR FURTHER PRODUCTIVE MILITARY SERVICE.

During the presentencing proceeding the military judge admitted Prosecution Exhibit 4. This exhibit is a letter report of a drug screening of the appellant conducted by a Counselling and Assistance Center (CAAC). After stating a number of observations concerning the appellant's drug and alcohol history, the letter states: "In accordance with [Chief of Naval Operations Instruction 5350.4B], the appellant is considered to have no potential for further productive military service. Potential for continued drug and alcohol abuse appears to be high."

The trial counsel offered Prosecution Exhibit 4 under Rule for Courts–Martial (R.C.M.) 1001, Manual for Courts–Martial, United States, 1984, to show the appellant's potential for rehabilitation. Trial counsel also noted the exhibit was a part of the appellant's service record. Trial defense counsel objected to the admission of this document on grounds it constituted an inadmissible recommendation for an administrative separation. Record at 25–26. The military judge admitted portions of the exhibit including the language noted above. He stated, however, he would disregard another paragraph which set forth a recommendation for the appellant's administrative discharge. Record at 26. Before us, the appellant renews his objection to the admission of this exhibit on the same grounds. Specifically, he maintains the admission of the exhibit violated the holding in *United States v. Ohrt,* 28 M.J. 301 (C.M.A.1989), and its progeny. He seeks a rehearing on his sentence. We agree the exhibit was erroneously admitted; however, we view the error as harmless.

Determining what Government-sponsored evidence may be admitted in the court-martial presentencing proceedings continues to be a vexing problem. Common sense dictates that presentencing proceedings should not be burdened with tedious limitations on the scope of such evidence and that the rule ought to be sufficiently generous to allow the military judge discretion to admit any evidence that will be useful to the sentencing authority in fashioning an appropriate sentence. On the other hand, R.C.M. 1001 serves to ensure uniformity in sentencing consideration and to preclude the presentencing proceedings from becoming a free-for-all. Whatever one's philosophy on this score is, we must adhere to R.C.M. 1001.

R.C.M. 1001(b)(2) provides:

Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's marital status; number of dependents, if any; and character of prior service. Such evidence includes copies of reports reflecting the past efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions including punishments under Article 15.[2]

We pause to observe that the cited portion of the CAAC evaluation concerns none of these. It concerns rather the appellant's potential for further productive service. In this respect, R.C.M. 1001(b)(5) is germane. It provides: "The trial counsel may present, *by testimony or oral deposition* in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct." (Emphasis added.)

The *Ohrt* line of cases has attempted to clarify the use of this rule in the presentencing proceedings. The principles from this line of cases concern: (1) the basis for an opinion concerning rehabilitative potential, (2) the scope of the opinion, and (3) the limitation on the use of euphemisms that may be employed to subvert the rule. *United States v. Cherry,* 31 M.J. 1, 4–5 (C.M.A.1990). These general principles may be restated as follows:

▪ (1) As used in this rule, "rehabilitation" means: "[T]he process of restoring an individual (as a convict, mental patient, or disaster victim) to a useful and constructive place in society through some form of

**2.** For the Department of the Navy, the Secretarial regulations in this regard are set forth in § 0141 of the Manual of the Judge Advocate General (JAGMAN), JAG Instruction 5800.7C.

vocational, correctional, or therapeutic retraining or through relief, financial aid, or other reconstructive measure. *United States v. Horner*, 22 M.J. 294, 295–96 (C.M.A.1986) (citing *Webster's Third New International Dictionary, Unabridged* 1914 (1981)). Thus, the term "potential for rehabilitation" "encompasses more than the question of whether an accused should be restored to duty." 22 M.J. at 296.

▇▇▇ (2) Testimony as to an accused's potential for rehabilitation must be based on an assessment of the accused's character and potential. A foundation must be laid to demonstrate that the witness possesses sufficient information and knowledge about the accused's character, performance of duty as a servicemember, his moral fiber, and determination to be rehabilitated. Testimony as to an accused's potential for rehabilitation may not be based solely on the severity of the offense. *Horner*, 22 M.J. at 296; *Ohrt*, 28 M.J. at 304. This limitation also applies to testimony offered in rebuttal. *United States v. Pompey*, 33 M.J. 266, 269–70 (C.M.A.1991); *United States v. Gunter*, 29 M.J. 140 (C.M.A.1989).

▇▇▇ (3) A good potential for rehabilitation is mitigating, but a poor potential for rehabilitation is not aggravating. *United States v. Aurich*, 31 M.J. 95, 96–97 note (C.M.A.1990). Accordingly, R.C.M. 1001(b)(5) was not designed to be the means to influence the sentencing authority to impose a punitive discharge or to be the vehicle to make an *administrative decision* about whether an accused should be retained or separated. *Ohrt*, 28 M.J. at 306. In other words, if an accused does not warrant a punitive discharge as punishment based on the circumstances of the offense, the accused's lack of acceptance of responsibility, and his prior record, then the accused should not be awarded a punitive discharge because he lacked rehabilitative potential. *Aurich*, 31 M.J. at 96–97 note.

▇▇▇ (4) The appropriateness of a punishment must be decided by the court-martial and cannot be usurped by a witness. Therefore, witnesses are not permitted to testify that an accused should be punitively discharged and may not use euphemisms that have the same effect (e.g., "no potential for continued service," "he should be separated," "it would be a waste of resources to retain the accused"). *Ohrt*, 28 M.J. at 305; *United States v. Kirk*, 31 M.J. 84, 89 (C.M.A.1990). "R.C.M. 1001(b)(5) contemplates one question: 'What is the accused's potential for rehabilitation?'— and one answer: 'In my opinion, the accused has _____ [good, no, some, little, great, zero, much, etc.] potential for rehabilitation.'" *Aurich*, 31 M.J. at 96 (bracket in original).

▇▇▇ In applying the foregoing, the United States Court of Military Appeals has concluded that the head of a base drug and alcohol abuse control program, once properly qualified, could testify that the accused's potential to stay off cocaine and his ability to rehabilitate himself were poor in rebuttal to the accused's evidence to the contrary. *Gunter*, 29 M.J. at 141–42. In the case before us, we have the expression of two opinions: (1) the appellant had no potential for productive military service, and (2) the appellant's potential for continued drug and alcohol abuse appears high. The former is one of the impermissible euphemisms referred to by the Court. Whether the appellant has potential for further productive military service according to an administrative regulation is not relevant under the authorities cited above. The point is not that the letter was inappropriate as to *its* intended purpose. It appears to be germane to the administrative disposition of the appellant in accordance with Navy directives. The issue *at trial,* however, was the use of the letter in determining the appellant's *punishment* for these offenses. In that respect the first opinion could not be considered.

▇▇▇ The appellant's potential for continued drug abuse might be admissible with the proper vehicle and foundation. We observe, however, that the opinion was ventured not by a witness or by way of oral deposition, but rather by correspondence. While the letter sets forth the basis

for the opinion, its basis could not be tested the same way as testimony or an oral deposition could be. Undoubtedly, the President in promulgating R.C.M. 1001(b)(5) was particularly concerned about the use of opinions that purport to forecast the future and felt that if such opinions were to be used to influence the sentencing authority, they should be well founded and properly tested. Therefore, this second opinion likewise should not have been entertained by the military judge.

 Having concluded Prosecution Exhibit 4 was erroneously admitted, we examine the effect of the error. Article 59(a), UCMJ, 10 U.S.C. § 859(a) provides that "a finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." In this case, the appellant was convicted, *inter alia*, of two counts of marijuana use immediately after he had received Article 15 punishment for a prior marijuana use. One of the charged marijuana uses followed immediately on the heels of a brief period of pretrial confinement demonstrating incarceration had no impact on the appellant. The appellant's case in extenuation and mitigation included his statement explaining his actions. He attributed his drug problems to the onset of marital problems,[3] and the appellant stated his intentions to pursue drug rehabilitation. The military judge specifically excluded from his consideration of Prosecution Exhibit 4 an explicit recommendation for administrative discharge. The appellant was sentenced to confinement for 30 days, substantially less than the jurisdictional maximum. He also was sentenced to no forfeitures. Therefore, the impact of this exhibit, given the nature of the appellant's repeated drug abuse, was minimal. Also, considering the case independent from Prosecution Exhibit 4, one concludes Prosecution Exhibit 4 appears to state the obvious—the appellant was a drug abuser with difficulty altering his behavior. Under the circumstances, the error was harmless. *See United States v. Reid*, 32 M.J. 146 (C.M.A.1991); *United States v. Rhoads*, 32 M.J. 114 (C.M.A.1991); *United States v. Haliday*, 32 M.J. 828 (N.M.C.M.R. 1991).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge STRICKLAND and Judge ORR concur.

---

**3.** The appellant's spouse testified at trial on behalf of the appellant. The appellant and his spouse have two children and were expecting a third. The thrust of Mrs. Bolden's testimony concerned financial hardships she and her family were encountering.